**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 16, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALEXANDER SMITH,

Defendant - Appellant.

No. 23-1314
(D.C. No. 1:22-CR-00248-CNS-1)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **EID, KELLY**, and **ROSSMAN**, Circuit Judges.[**]

_____

Defendant-Appellant Alexander Smith was charged with being a felon in possession of a firearm and ammunition.  18 U.S.C. § 922(g)(1).  He pled guilty and was sentenced to 100 months' imprisonment and three years' supervised release.  In sentencing Mr. Smith, the district court applied a cross reference, U.S.S.G. §§ 2K2.1(c)(1)(A), 2X1.1(c)(1), resulting in a base offense level of 27 for attempted second-degree murder, id. § 2A2.1(a)(2).  On appeal, Mr. Smith argues that the base

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

offense level should have been 20, id. § 2K2.1(a)(4), because he lacked the requisite intent to commit murder, was acting in self-defense or imperfect self-defense, and was not a mutual combatant. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

Mr. Smith was working at an auto shop when several men approached him and threatened him, including a threat to kill him. Mr. Smith told them that he did not want to fight at work. Mr. Smith and one of the men agreed that the fight would continue at a park when Mr. Smith got off work and they shook hands. Thereafter, the men left the store, and Mr. Smith followed them out, although his cousin tried to deter him by physically restraining him. Seconds later, a gunfight between Mr. Smith and the men occurred. Both Mr. Smith and his cousin sustained gunshot injuries. We discuss other facts as pertinent below.

## Discussion

We review sentences under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). Legal questions about application of the Sentencing Guidelines are reviewed de novo, and factual challenges are reviewed for clear error, deferring to the district court's application of those guidelines to the facts. United States v. Jackson, 82 F.4th 943, 949 (10th Cir. 2023). Issues not raised below are reviewed for plain error. Id.

2

Mr. Smith objected to the cross-reference in the Presentence Report (PSR) on the basis that he had no specific intent to kill anyone and that he acted in self-defense.  I R. 19–20; III R. 13.  Indeed, application of the cross-reference required a finding that Mr. Smith had the specific intent to kill.  United States v. Brooks, 67 F.4th 1244, 1249–50 (10th Cir. 2023).  Self-defense requires a reasonable belief that one is in imminent danger of death or great bodily harm, justifying an in-kind response, i.e. deadly force.  United States v. Toledo, 739 F.3d 562, 567 (10th Cir. 2014).  Both self-defense and imperfect self-defense require a subjective belief of imminent danger, but with imperfect self-defense the belief of imminent danger is not objectively reasonable, resulting in lesser criminal liability such as involuntary manslaughter.  United States v. Britt, 79 F.4th 1280, 1286–87 (10th Cir. 2023).  Finally, one who is an aggressor generally cannot rely upon self-defense, imperfect or otherwise.  See United States v. Rico, 3 F.4th 1236, 1237 (10th Cir. 2021).

Mr. Smith maintains that he exited the building to ensure the group of men left the building and were not harassing customers, rather than to follow them and confront them. At sentencing, he stated that he was not trying to kill anyone.  III R. 31.  Unpersuaded, the district court found as follows:

> Although the [first] encounter had ended, Mr. Smith elected to pursue the suspects, restart the altercation, and ultimately and shortly thereafter fired his gun in the direction of the suspects.  This was after, again, his cousin pled with him not to take the actions he was doing, and courts have inferred an intent to kill in similar situations.  Importantly, it's clear from the videos that at several times during the encounters Mr. Smith gestured to his weapon on his waistband.

3

Id. at 38–39.  The district court was persuaded that Mr. Smith was the initial aggressor and instigator of the second encounter and did not act in self-defense.  It relied upon the video evidence, including Mr. Smith's demeanor, the short period of time between his exit and firing ten rounds, and the inconsistent accounts he gave to investigating officers. Id. at 37–39.

The district court's findings are supported by the record.  We have noted that firing a gun at another can support an inference of an intent to kill.  Brooks, 67 F.4th at 1251–52.  Mr. Smith argues that (1) the suspects began the series of events and were hostile, (2) the situation more properly is viewed as one encounter, and (3) the evidence is at best inconclusive — for example, we don't know what words were spoken when the men departed and who fired the first shot.

We are not persuaded.  Rarely is evidence all one way.  The district court permissibly discounted Mr. Smith's claim that he was only trying to protect customers when he exited the store, particularly in light of his cousin's unsuccessful intervention. Mr. Smith's carrying a firearm at work (despite his status), his reaching for his gun at least twice, and deploying it almost immediately after exiting the store support the ultimate findings.  Having determined that he was the aggressor in the second encounter, the district court obviously rejected the notion that he had a subjective belief of imminent danger, let alone an objective belief.  For this reason, there was no error, plain or otherwise, in rejecting an imperfect self-defense theory.  Given our disposition, it is unnecessary to consider the district court's alternative holding that as a mutual combatant, he could not rely upon self-defense.  III R. 38.

4

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge